1 | Ronald P. Oines (State Bar No. 145016)
roines@rutan.com
2 | Sarah Van Buiten (State Bar No. 324665)
svanbuiten@rutan.com
3 | RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
4 | Irvine, CA 92612
Telephone: 714-641-5100
5 | Facsimile: 714-546-9035

6 | Christopher M. Weimer (*pro hac vice* forthcoming)
cweimer@pirkeybarber.com
7 | David E. Armendariz (*pro hac vice* forthcoming)
darmendariz@pirkeybarber.com
8 | Taylor Luke (*pro hac vice* forthcoming)
tluke@pirkeybarber.com
9 | PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
10 | Austin, TX 78702
Telephone: 512-322-5200
11 | Facsimile: 512-322-5201

12 | Attorneys for Plaintiff
NINTENDO OF AMERICA INC.

13

14 | UNITED STATES DISTRICT COURT

15 | CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17 NINTENDO OF AMERICA INC., a Washington corporation, | Case No.    2:25-cv-3960 |
| 18 | Judge: |
| 19 Plaintiff, | **COMPLAINT** |
| 20 vs. | **JURY DEMANDED** |
| 21 HUMAN THINGS, INC. d/b/a GENKI, a Delaware corporation. | |
| 22 Defendant. | |

23

24 | **COMPLAINT**

25 | Plaintiff Nintendo of America Inc., a Washington corporation ("Plaintiff" or

26 | "NOA"), appearing through its undersigned counsel, alleges as follows:

27 | **THE PARTIES**

28 | 1.    Plaintiff Nintendo of America Inc. is a Washington corporation with a

1  principal place of business at 4600 150th Avenue NE, Redmond, Washington 98052.
2  NOA is a wholly owned subsidiary of Nintendo Co., Ltd. ("NCL") (collectively with
3  NOA, "Nintendo"), a Japanese company headquartered in Kyoto, Japan. NOA is
4  responsible for the marketing, distribution, and sale of Nintendo's products and the
5  enforcement of Nintendo's intellectual property rights in the United States. NCL
6  develops and designs electronic video game consoles, games, and accessories,
7  including the Nintendo Switch, Nintendo Switch Lite, and Nintendo Switch OLED
8  consoles (collectively, the "Nintendo Switch"), and the Nintendo Switch 2 console.

9      2.      Defendant Human Things, Inc., d/b/a Genki ("Defendant" or "Genki"),
10 is a Delaware corporation with a principal place of business at 2222 Felicia Avenue,
11 Rowland Heights, California 91748.

12          **NATURE OF ACTION AND JURISDICTION**

13     3.      This is an action for trademark infringement, unfair competition, and
14 false advertising under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et*
15 *seq.* (the "Lanham Act"); for trademark infringement and unfair competition under
16 California common law; and for statutory unfair competition under California
17 Business and Professions Code § 17200.

18     4.      This Court has jurisdiction over the subject matter of this action pursuant
19 to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Chapter 85 of the Judiciary
20 and Judicial Procedure Code, 28 U.S.C. §§ 1331 and 1338, and has supplemental
21 jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

22     5.      This Court has personal jurisdiction over Defendant because its principal
23 place of business is in California and because it engaged in wrongful action in
24 California, including acts within this District.

25     6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because
26 Defendant is deemed to reside here under § 1391(c)(2) and (d). Venue is also proper
27 in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events
28 giving rise to NOA's claims occurred here.

Rutan & Tucker, LLP
*attorneys at law*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FACTS

### NINTENDO AND ITS TRADEMARKS

7.      Nintendo is a company and brand famous throughout the United States and the world, known by consumers of all ages for its video games, gaming consoles, and characters.

8.      For decades, Nintendo has been a leading developer and producer of video games and video game consoles. In 1983, Nintendo released the Nintendo Entertainment System, or "NES," in the United States, which introduced millions of fans to now-classic games like *Super Mario Bros.*, *The Legend of Zelda*, and *Donkey Kong*.

9.      Over the ensuing decades, Nintendo followed up the popularity of the NES console with several generations of groundbreaking video game consoles, including the Super Nintendo Entertainment System, Nintendo 64, Nintendo GameCube, Wii, Wii U, and Nintendo Switch.

10.     Nintendo's consoles have achieved significant success and popularity. Fans eagerly await each new entry in Nintendo's line of consoles, with each console delivering cutting-edge technological innovations and access to exclusive Nintendo game titles.

11.     Nintendo's most recent hit console was the Nintendo Switch, released in March 2017. The Nintendo Switch is a home video console that can also be played "on the go" as a handheld console. Nintendo owns, develops, and distributes the popular Nintendo Switch video game console.

12.     The Nintendo Switch supports several gaming accessories, including game controllers that calibrate to a player's Nintendo Switch system. Nintendo's primary, official controllers for the Nintendo Switch are called Joy-Con controllers, which can slide cleanly into the sides of a console to activate handheld use.

13.     The Nintendo Switch is sold in stores around the world and has become one of the best-selling video game consoles of all time, selling over 150 million units

worldwide. Nintendo also makes award-winning video game software that consumers can play exclusively on the Nintendo Switch. The top five Nintendo-developed games released for the Nintendo Switch have sold more than 200 million copies as of December 2024, and individually each of those game titles has sold over 29 million copies. The Nintendo Switch is one of the most popular video game consoles of all time.

14.    In addition to the Nintendo Switch's famous reputation, Nintendo has developed strong common-law rights in Nintendo Switch-related trademarks that have been in use in commerce since as early as the Nintendo Switch's original release campaign in 2016, including the following:



15.    Further, Nintendo has trademark registrations in the above design marks as well as in the word marks NINTENDO SWITCH and JOY-CON for video game-related goods in Classes 9, 28, and 41 and for bags and apparel-related goods in Classes 18 and 25 (collectively, the "NINTENDO SWITCH Marks"). Examples of Nintendo's registered NINTENDO SWITCH Marks are shown in the chart below. *See, e.g.*, 5,443,363; 5,609,612; 5,352,230; 5,511,496; 5,477,313; 5,298,339.

| Mark | Registration Number | Classes Covered |
|---|---|---|
| | 5,443,363 | Classes 9, 28, 41 |

Rutan & Tucker, LLP
attorneys at law

| | | |
|---|---|---|
|  | 5,609,612 | Classes 9, 28 |
|  | 5,352,230 | Classes 9, 28, 41 |
|  | 5,511,496 | Class 18, 25 |
| NINTENDO SWITCH | 5,477,313 | Classes 9, 28, 41 |
| JOY-CON | 5,298,339 | Class 28 |

16.    Plaintiff's registrations are valid and subsisting, and many are incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of these registrations and applications are attached as **Exhibit A**.

17.    Nintendo's NINTENDO SWITCH Marks are inherently distinctive and serve to identify and indicate the source of Plaintiff's products and services to the consumer public.

18.    The NINTENDO SWITCH Marks have become distinctive in the marketplace to designate Plaintiff, to distinguish Plaintiff and its offerings from those of others, and to distinguish the source or origin of Plaintiff's offerings. The consuming public, including Nintendo's devoted fanbase, widely recognizes and associates the NINTENDO SWITCH Marks with Plaintiff. Due to their widespread promotion and recognition by the consuming public, the NINTENDO mark and the NINTENDO SWITCH Marks have become famous within the meaning of Section

1    43(c) of the Lanham Act.

2        19.    Nintendo's loyal and longstanding fanbase excitedly anticipates each

3    release of Nintendo's newest games and consoles. Given the extreme success of the

4    Nintendo Switch, fan anticipation is especially strong for the upcoming release of

5    Nintendo's next console: the Nintendo Switch 2.

6        20.    Shortly after the release of the Nintendo Switch, Nintendo began

7    planning its successor console, with formal hardware development beginning around

8    2019. The Nintendo Switch 2 employs the same hybrid home-and-handheld model of

9    the original Nintendo Switch with increased processing power, a larger screen, new

10   chat and social features, and improved Joy-Con 2 controllers, which now have a new

11   mouse function.

12       21.    Since 2011, Nintendo has used a unique series of strategically timed,

13   special livestreams to announce upcoming products and games and share company-

14   specific news with its fans and consumers. Each presentation, exclusively referred to

15   as a "Nintendo Direct," is not scheduled on a regular basis, but is rather reserved for

16   special announcements, such as the first official, public reveal of a particular product,

17   experience, or feature. Each Nintendo Direct is an especially curated, key marketing

18   tactic designed to announce, promote, and garner interest in specific Nintendo

19   hardware, software and experiences. Millions of Nintendo fans worldwide eagerly

20   await each Nintendo Direct and tune in to learn more about their next surprise and

21   delight.

22       22.    On January 16, 2025, Nintendo premiered a Nintendo Direct to publicly

23   announce the Nintendo Switch 2's name and release images of the console for the

24   first time. Nintendo's announcement invited fans to tune into a Nintendo Direct

25   presentation scheduled for April 2, 2025, for more details related to the Nintendo

26   Switch 2. The announcement also promised a series of hands-on events around the

27   world for the Nintendo Switch 2, with details of those events to be provided through

28   Nintendo's official website.

Rutan & Tucker, LLP
attorneys at law

23.    On April 2, 2025, as promised, Nintendo premiered its highly anticipated Nintendo Direct presentation surrounding the Nintendo Switch 2. The hour-long live presentation provided information on the Nintendo Switch 2, its features and accessories, and upcoming games for the console. The presentation also announced that the Nintendo Switch 2 would officially be released on June 5, 2025.[1]

## DEFENDANT AND ITS UNLAWFUL ACTIVITIES

### *Genki's Actions Generally*

24.    Defendant Genki operates an online business selling electronic accessories for smartphones, tablets, and various gaming consoles.

25.    Beginning at least as early as December 2024, Defendant embarked upon a strategic campaign intended to capitalize on the public interest surrounding Nintendo's next-generation console.

26.    In January 2025, Defendant began advertising that it gained unauthorized access to Nintendo's upcoming Nintendo Switch 2 console, which had not yet been released or even revealed publicly by Nintendo.

27.    Defendant also advertised that because of its unique access to a genuine unreleased Nintendo Switch 2 console, it could manufacture gaming accessories that are compatible with the Nintendo Switch 2. Further, Genki announced it would sell those allegedly compatible accessories contemporaneously with Nintendo's release of its console.

28.    Following its initial claims of access to a genuine Nintendo Switch 2 console, Defendant's statements were contradictory and inconsistent, with Defendant later stating that it was never in possession of a console. Nevertheless, Defendant has since maintained its representation to consumers that its accessories will be compatible with the Nintendo Switch 2 upon the console's release.

29.    Ensuring the compatibility of Defendant's accessories would not be possible unless and until Defendant has access to a Nintendo Switch 2 console or to

---

[1] As of the filing of this action, the Nintendo Switch 2 has yet to be released to the public.

Rutan & Tucker, LLP
*attorneys at law*

proprietary technical specifications, neither of which Nintendo provided and/or authorized to be provided to Defendant.[2] Therefore, either (1) Defendant is not in possession of a genuine console and thus cannot claim compatibility with enough certainty to make its advertising claims in good faith, or (2) Defendant unlawfully or illicitly obtained an authentic Nintendo Switch 2, or proprietary technical information about the Nintendo Switch 2, prior to the console's release to the public.

30.    Additionally, Defendant has used the NINTENDO SWITCH Marks in connection with the marketing and promotion of its unauthorized Nintendo Switch 2 accessories, misleading consumers into believing that it offers functional, authentic, and authorized Nintendo Switch 2 products.

*A Timeline of Genki's Wrongdoing*

31.    Genki's wrongful actions began in December 2024 when Genki first began promoting its accessories for the then highly confidential, unrevealed, and unannounced Nintendo Switch 2.  For example, Genki attempted to connect with GameStop CEO Ryan Cohen to discuss "the launch switch 2 accessories [Genki was] working on."

---

[2] To avoid leaks of confidential information about its new games and consoles, Nintendo expends significant resources toward protection efforts, including but not limited to stringent disclosure requirements and confidentiality agreements, physical security, and elegant data security and encryption practices. Prerelease access to Nintendo's physical products or schematics can only arise from illegal or illicit action.



32.    Then on January 1, 2025, Genki's exhibitor page went live for the 2025 Consumer Electronics Show ("CES") publicizing Genki's intention to host a "Booth Media Briefing" on January 7, 2025, in which it offered to discuss any information about the not-yet-announced "Switch 2 . . . [Defendant] may have as well as the stuff [Defendant is] making for it."



33.    At the CES event, Genki demoed and promoted unauthorized purported mockups and renderings of the Nintendo Switch 2 and its accessories. Further, Genki presented at least two unauthorized 3D-printed mockups of the Nintendo Switch 2 to reporters. Genki boasted its alleged early access to the unreleased console and allowed guests to hold and measure the mockups.

34.    At Genki's CES Booth, Genki's CEO, Edward Tsai, personally showed

off the 3D-printed mockups and stated to different reporters that Genki had or had access to an authentic "Switch 2," on which Genki based the mockups, renderings, and 3D-printed mockups. Genki's representatives, including its CEO, also did multiple media interviews discussing their "eight accessories" and purportedly confirming specific, highly confidential designs and functionality of the not-yet announced Nintendo Switch 2. An article detailing these statements from Genki is attached as **Exhibit B**.

35.    Genki also displayed a video at its CES booth showing a purported 3D render of the Nintendo Switch 2, which it later also posted on its website. Genki included Nintendo's marks on its rendering of the Nintendo Switch 2 dock, including Nintendo's registered design mark shown in Registration No. 5,352,230:



36.    Genki's presentation and statements garnered significant attention from the media and public resulting in confusion among consumers as to the validity of Genki's statements and association with Nintendo. The media, especially those having had direct contact with Genki at CES, promoted the impression that the 3D printed mockups were accurate replicas of the Nintendo Switch 2.  Similarly, many consumers expressed belief that Genki (1) was sent a model of the Nintendo Switch 2 by Nintendo itself or (2) received approval from Nintendo to see the new hardware for the purpose of developing accessories. The issue of whether or not Genki was an authorized accessory manufacturer was further debated throughout "Nintendo Switch 2" Reddit community threads.

37.    Public discourse and confusion over Genki's announcements were so significant that on January 10, 2025, Nintendo issued a statement to reporters about the incident, clarifying that "the gaming hardware that Genki presented as Nintendo hardware at CES is unofficial and was not provided to the company by us." A copy of an article discussing the January 10, 2025 statement is attached as **Exhibit C**.

38.    The same day that Nintendo issued its January 10 statement, Genki backtracked on its bold claims of early access to the console. In an interview, a Genki representative stated that Genki never had access to an authentic pre-release model of the Nintendo Switch 2. Genki also posted a thread on x.com (formerly Twitter) retracting its statements. Instead, the representative claimed that Genki's models were based on alleged "leaked" information in the industry. The interview and Twitter thread are attached as **Exhibit D**. Nevertheless, Genki continued to represent that its accessories would be compatible with the upcoming Nintendo Switch 2.

39.    On January 11, a news article published by The Game Post credited Genki with a rendering of the Nintendo Switch 2 console, reproduced below, featuring the official design mark and full name of the console, which had still not yet been announced by Nintendo. A copy of the article is attached as **Exhibit E**.



40.    On January 20, Genki posted a picture of its CEO, Edward Tsai, on its official Twitter account with the caption "Genki ninjas infiltrate Nintendo Kyoto HQ" in an apparent attempt to further confuse the public as to whether Genki had access to

a Nintendo Switch 2 and/or an affiliation with Nintendo.



41.    Following Genki's CES participation, Genki updated its website and advertisements to boast about its early access to Nintendo Switch 2 information and its attention-grabbing "leak" of the console renders at CES, saying "Can you keep a secret? We can't…"



42.    Genki advertised that its accessories will be immediately compatible with the Nintendo Switch 2 on "day one" of the console's release, as shown below. The advertisement explicitly capitalizes on the attention Genki garnered for the leaked "renders" it displayed at CES: "You saw the renders. You heard the buzz. Now it's time to get real. We're gearing up for the Switch 2 launch, and we'll be bringing the

1  hype to PAX East this year."



43.    PAX East is an annual gaming conference scheduled to be held this year from May 8 through May 11 in Boston, Massachusetts.

44.    On April 1, 2025—the day before Nintendo's highly anticipated Nintendo Switch 2 Nintendo Direct—Genki mass-emailed its marketing list and posted on social media an announcement of its *own* "Direct" presentation to be held on the same day as Nintendo's highly anticipated presentation.





45.     Approximately two hours after Nintendo's Switch 2 Nintendo Direct presentation concluded, Genki mass-emailed its marketing list reminding them to tune in to its own "Genki Direct" (also titled "Genki Indirect") on YouTube.





46.    The "Genki Direct" was streamed and then posted on Genki's official YouTube channel, advertising its console accessories that it claimed would be compatible with the Nintendo Switch 2. Screen captures from the presentation are reproduced below.





47.    In the presentation, Genki featured a Nintendo Switch 2 render that was labeled as a "Genki Glitch 2," an obvious reference to the Nintendo Switch 2. The "Genki Direct" nevertheless concluded with a statement that "Glitch 2 Accessories [would be] Compatible with the Switch 2" and would be available for pre-order starting that day.

48.    The still image Genki showed on their livestream prior to the "Genki

Direct" starting and the thumbnail for Genki's presentation is a title page designed to be very similar and almost identical to the styling used by Nintendo for its Nintendo Direct presentations, as shown below.

| Images from the Nintendo Direct | Images from the "Genki Direct" |
|---|---|
|  |  |

49.     Following the "Genki Direct," Genki immediately opened preorders of its Nintendo Switch 2 accessories, advertising a release date alongside the Nintendo Switch 2 in June 2025, as shown in the example below:

1

2

3

4

5

6

7

8

9

10

11



12   50.    Defendant's preorder accessory listings make multiple explicit claims of

13   compatibility with the unreleased Nintendo Switch 2.  For example, Genki claims that

14   its "Attack Vector" case "[s]lides easily into the dock with no case removal needed"

15   and is "[k]ickstand friendly." Similarly, Genki claims its "Force Field 2" case has a

16   "[d]ockable fit" and is "[k]ickstand   friendly."  Additionally, Genki claims that Joy-

17   Con 2 controllers just "[s]nap . . . in magnetically" to its "Joy-Station" charger and

18   grip(s) with "LED lights [that] let you know when each Joy-Con is juiced and ready

19   for action." Examples of Defendant's product listings are attached as **Exhibit F**.

20   51.    Defendant's preorder listings also use Nintendo's JOY-CON trademark

21   in multiple instances in connection with Genki's own products (i.e., referring to a

22   feature of its product as "Joy-Con grips"), as shown below:

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12



13    52.    Through its marketing efforts, Defendant continues to exploit the

14 attention of the media and fan base and usurp and threaten sales of Nintendo's own

15 accessories. For example, on April 23, 2025, Genki sent a promotional email to

16 consumers boasting its Nintendo Switch 2 accessories "that do[n't] just match the

17 experience—[but] amplif[y] it."

18
19
20



21    53.    Genki's activities have been designed to capitalize on and appropriate

22 the public's anticipation for the release of Nintendo's next-generation console.

23    54.    Genki has used Nintendo's trademarks and trade dress in connection

24 with the marketing of its business and its unauthorized third-party accessories, in

25 violation of Nintendo's rights in those marks.

26    55.    On information and belief, Genki falsely represented that it had access

27 to an authentic unreleased model of Nintendo's next-generation console. Genki has

28

1    since stated through representatives that its claims of access were false.

2       56.    Genki's claims of compatibility would be impossible to guarantee

3    without unauthorized, illegal early access to the Nintendo Switch 2. Thus, Genki has

4    misled and is misleading the public as to its ability to guarantee the compatibility of

5    its products with the Nintendo Switch 2.

6       57.    Additionally or alternatively, Genki in fact illegally and/or illicitly

7    gained access to a pre-release model of the Nintendo Switch 2, rendering its

8    statements otherwise objectively false.

9       58.    Defendant's infringing use of Nintendo's trademarks in its advertising is

10   in direct competition with Nintendo's and its licensee's legitimate marketing of

11   Nintendo's new console and authorized accessories.

12      59.    Nintendo has not authorized Defendant to use its marks, including the

13   NINTENDO SWITCH Marks, in connection with Defendant's business or products.

14      60.    Defendant had prior knowledge of Plaintiff's NINTENDO SWITCH

15   Marks before using those marks in connection with its marketing and accessories.

16      61.    Defendant intentionally reproduced Plaintiff's NINTENDO SWITCH

17   Marks on its fabricated mock-up of Nintendo's next-generation console in order to

18   simulate Plaintiff's well-known brand and exploit and appropriate for itself the public

19   goodwill associated with Plaintiff's NINTENDO SWITCH Marks.

20      62.    Defendant's actions are intended to deceive consumers into believing

21   that Defendant is connected to, associated with, or affiliated with Plaintiff through

22   Defendant's (1) use of the NINTENDO SWITCH Marks and (2) claims of special

23   access to a pre-release model of the Nintendo Switch 2.

24      63.    Defendant's blatant copying of the NINTENDO SWITCH Marks

25   establishes that Defendant's actions were willful and undertaken in bad faith.

26      64.    Defendant has used and promoted the NINTENDO SWITCH Marks in

27   commerce without Plaintiff's authorization. Defendant's use of the NINTENDO

28   SWITCH Marks began long after Plaintiff developed rights in the NINTENDO

Rutan & Tucker, LLP
attorneys at law

2945/099999-0084
22193357.1 a05/02/25                        -19-                         COMPLAINT

1  SWITCH Marks.

2  <u>**EFFECTS OF DEFENDANT'S UNLAWFUL ACTIVITIES**</u>

3  65.    Defendant's unauthorized use of the NINTENDO SWITCH Marks has

4  caused, and is likely to continue to cause, confusion among consumers. Consumers

5  are likely to falsely perceive a connection, association, sponsorship, or affiliation

6  between Defendant and its products and services on the one hand and those of

7  Nintendo and its licensees on the other.

8  66.    Defendant's unauthorized use of the NINTENDO SWITCH Marks has

9  caused, and is likely to continue to cause, initial interest confusion among consumers,

10  as they are likely to initially perceive Defendant's products as authorized by or

11  directly produced by Nintendo or its licensees, especially as Nintendo launches its

12  own preorders for Switch 2 products at the same time. Through its actions, Defendant

13  is taking advantage of the trust and loyalty that Nintendo fans have for the Nintendo

14  brand and mark and causing actionable harm.

15  67.    Consumers who unwittingly purchase or pre-order Genki's products

16  thinking that the products are genuine or endorsed or authorized by Nintendo are

17  likely to impute any shortcomings, defects, or lack of quality in Genki's products to

18  Nintendo because of Genki's actions, including Genki's use of the NINTENDO

19  SWITCH Marks.

20  68.    Defendant's unauthorized use of the NINTENDO SWITCH Marks

21  falsely designates the origin of its products and services and falsely represents

22  circumstances with respect to Defendant, Defendant's products and services, and

23  Defendant's relationship with Nintendo.

24  69.    Defendant's unauthorized use of the NINTENDO SWITCH Marks

25  enables Defendant to trade on the goodwill built up at great labor and expense by

26  Nintendo over many years, and to gain acceptance for its goods and services not solely

27  on its own merits, but on the reputation and goodwill of Nintendo, the NINTENDO

28  SWITCH Marks, and Nintendo's products and services.

70.    Defendant's unauthorized use of the NINTENDO SWITCH Marks unjustly enriches Defendant at Plaintiff's expense. Defendant has been and continues to be unjustly enriched by obtaining a benefit from Plaintiff by taking undue advantage of Plaintiff and its goodwill. Specifically, Defendant has taken undue advantage of Plaintiff by trading on and profiting from the goodwill in the NINTENDO SWITCH Marks developed and owned by Plaintiff, resulting in Defendant wrongfully obtaining a monetary and reputational benefit for his own business.

71.    Defendant's unauthorized use of the NINTENDO SWITCH Marks removes from Plaintiff the ability to control the quality of products sold under the NINTENDO SWITCH Marks. This places the valuable reputation and goodwill of Plaintiff in the hands of Defendant, over whom Plaintiff has no control. This vulnerability is especially potent in light of Nintendo's upcoming release of its next-generation console, when Nintendo's fans and the public at-large can be expected to react to and establish the market reputation of Nintendo's newest product.

72.    Additionally, Defendant's false statements regarding its access to a pre-release console and/or the compatibility of its products with Nintendo's genuine products are material to consumers' decision to purchase or pre-order Defendant's products.

73.    In particular, because Genki was not authorized by Nintendo to access pre-release models of Nintendo's newest console, it is unlikely that Genki ever had access to an authentic Nintendo Switch 2, belying its representations otherwise to the public. In that case, Defendant misrepresented to Nintendo's fans that it could provide compatible accessories with the Nintendo Switch 2. Because compatibility with the Nintendo Switch 2 is certainly a threshold requirement for consumers seeking to purchase accessories for use with the Nintendo Switch 2, this misrepresentation is material to consumers' purchasing decisions.

74.    Unless these acts of Defendant are restrained by this Court, they will

1 continue, and they will continue to cause irreparable injury to Plaintiff, to the public,
2 and to Nintendo's consumers for which there is no adequate remedy at law.

3 ## COUNT I: FEDERAL TRADEMARK INFRINGEMENT
4 ### (15 U.S.C. § 1114)

5     75.    Plaintiff repeats the allegations above as if fully set forth herein.

6     76.    Defendant's acts complained of herein constitute infringement of
7 Plaintiff's federally registered NINTENDO SWITCH Marks in violation of 15 U.S.C.
8 § 1114(1).

9     77.    Defendant's unauthorized use of the NINTENDO SWITCH Marks is
10 likely to cause confusion, or to cause mistake, or to deceive consumers in violation of
11 15 U.S.C. § 1114(1).

12     78.    Plaintiff has been damaged by Defendant's infringement of its registered
13 marks.

14     79.    Defendant's acts complained of herein have been deliberate, willful,
15 intentional, or in bad faith, with full knowledge and conscious disregard of Plaintiff's
16 rights in the NINTENDO SWITCH Marks, and with intent to cause confusion and to
17 trade on Plaintiff's vast goodwill in the NINTENDO SWITCH Marks. In view of the
18 egregious nature of Defendant's infringement, this is an exceptional case within the
19 meaning of 15 U.S.C. § 1117(a).

20 ## COUNT II: FEDERAL UNFAIR COMPETITION
21 ### (15 U.S.C. § 1125(a))

22     80.    Plaintiff repeats the allegations above as if fully set forth herein.

23     81.    The acts of Defendant complained of herein constitute trademark
24 infringement, false designation of origin, and unfair competition in violation of
25 Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

26     82.    Defendant's use of Plaintiff's trademarks is likely to cause confusion, or
27 to cause mistake, or to deceive as to the affiliation, connection, or association between
28 Plaintiff and Defendant, or as to the origin, sponsorship, or approval of Defendant's

1    goods, services, or commercial activities, in violation of 15 U.S.C. § 1125(a)(1)(A).

2        83.    Plaintiff has been damaged by Defendant's acts of trademark
3    infringement, false designation of origin, and unfair competition.

4                    **COUNT III: FEDERAL FALSE ADVERTISING**
5                             **(15 U.S.C. § 1125(a))**

6        84.    Plaintiff repeats the allegations above as if fully set forth herein.

7        85.    The acts of Defendant complained of herein constitute false or
8    misleading descriptions or representations of fact in violation of Section 43(a) of the
9    Lanham Act, 15 U.S.C. § 1125(a).

10        86.    Defendant's statements that it obtained a pre-release model of the
11   Nintendo Switch 2 before the console's release are admitted by Defendant to be false,
12   demonstrating Defendant's knowledge of their falsity.

13        87.    Defendant's statements that it developed compatible accessories for the
14   Nintendo Switch 2 cannot be made with certainty without access to a console, which
15   Defendant denies it has had.

16        88.    Defendant's statements regarding its access to a pre-release console
17   and/or the compatibility of its products with Nintendo's genuine products are material
18   to consumers' decision to purchase or pre-order Defendant's products.

19        89.    Defendant's statements have a tendency to deceive—and are believed to
20   have deceived—a substantial segment of its audience.

21        90.    Defendant's false representations are material to the purchasing
22   decisions of consumers.

23        91.    Defendant caused its false statements to enter interstate commerce, in
24   making them at public exhibitions and posting them on social media and in its
25   advertising.

26        92.    Defendant's false representations in the marketing of its accessories
27   misrepresents the nature, characteristics or qualities of its goods, constituting false
28   advertising under 15 U.S.C. § 1125(a).

Rutan & Tucker, LLP
*attorneys at law*

1   93.   Plaintiff has been damaged by Defendant's false or misleading
2   descriptions or representations of fact.

3   ## COUNT IV: CALIFORNIA COMMON LAW TRADEMARK
4   ## INFRINGEMENT & UNFAIR COMPETITION

5   94.   Plaintiff repeats the allegations above as if fully set forth herein.

6   95.   Defendant's use of Plaintiff's trademarks is likely to cause confusion, or
7   to cause mistake, or to deceive as to the affiliation, connection, or association between
8   Plaintiff and Defendant, or as to the origin, sponsorship, or approval of Defendant's
9   goods, services, or commercial activities.

10   96.   Plaintiff has been damaged and will continue to be damaged by
11   Defendant's acts of trademark infringement, false designation of origin, and unfair
12   competition.

13   97.   The acts of Defendant complained of herein constitute common law
14   trademark infringement and unfair competition in violation of the common law of the
15   State of California.

16   ## COUNT V: STATUTORY UNFAIR COMPETITION UNDER CALIFORNIA
17   ## LAW

18   98.   Plaintiff repeats the allegations above as if fully set forth herein.

19   99.   Defendant's conduct complained of herein constitutes unlawful, unfair,
20   or fraudulent business acts or unfair, deceptive, untrue, or misleading advertising.

21   100.   Defendant's conduct is unlawful, as it constitutes trademark
22   infringement, unfair competition, and false advertising, as alleged above. Defendant's
23   conduct is unfair and fraudulent for the same reason.

24   101.   Members of the public are likely to have been deceived by Defendant's
25   statements regarding its access to Nintendo's unreleased hardware.

26   102.   As a direct and proximate result of Defendant's acts, Plaintiff has been
27   damaged and will continue to be damaged in an amount to be determined at trial.

28   103.   Plaintiff is entitled to all available relief, including an accounting and

Rutan & Tucker, LLP
*attorneys at law*

2945/099999-0084
22193357.1 a05/02/25

-24-

COMPLAINT

1  disgorgement of all illicit profits Defendant made on account of its deceptive, unfair,
2  and fraudulent business practices.

3       104.   Unless restrained and enjoined by this Court, Defendant will continue
4  the acts herein complained of. Because Plaintiff has no adequate remedy at law for
5  Defendant's ongoing willful conduct, Plaintiff is entitled to injunctive relief
6  prohibiting Defendant from continuing its unfair business practices.

7       105.   The acts of Defendant complained of herein therefore constitute unfair
8  competition under California Business and Professions Code § 17200.

9  **PRAYER FOR RELIEF**

10  **WHEREFORE,** Plaintiff requests that:

11       (a)   Defendant, its officers, agents, servants, employees, and attorneys,
12  and other persons who are in active concert or participation with any of them, be
13  permanently enjoined and restrained from designing, displaying, advertising, offering
14  for sale, manufacturing, shipping, delivering, selling, or promoting any product that
15  incorporates or is marketed in conjunction with Plaintiff's NINTENDO SWITCH
16  Marks and/or any other mark, name, or design confusingly similar to those marks,
17  names, or designs, and from any attempt to retain any part of the goodwill
18  misappropriated from Plaintiff;

19       (b)   Defendant, its officers, agents, servants, employees, and attorneys,
20  and other persons who are in active concert or participation with any of them, be
21  enjoined from making false representations or statements in the marketing of its
22  accessories regarding the nature, characteristics or qualities of its goods as they relate
23  to their compatibility or integration with Plaintiff's Nintendo Switch 2 and
24  NINTENDO SWITCH Marks;

25       (c)   Defendant, its officers, agents, servants, employees, and attorneys,
26  and other persons who are in active concert or participation with any of them, be
27  required to deliver up and destroy all products, packaging, signage, advertisements,
28  internet postings and advertisements, and any other materials bearing or using

1  Plaintiff's NINTENDO SWITCH Marks and/or any other mark, name, or design that
2  is confusingly similar to those marks, names, or designs;

3      (d)    Defendant be ordered to file with this Court and to serve upon
4  Plaintiff, within thirty (30) days after the entry and service on Defendant of an
5  injunction, a report in writing and under oath setting forth in detail the manner and
6  form in which Defendant has complied with the injunction;

7      (e)    Plaintiff recover all damages it has sustained as a result of
8  Defendant's infringement, unfair competition, and false advertising, and that said
9  damages be trebled;

10      (f)    An accounting be directed to determine Defendant's profits
11 resulting from Defendant's activities, and that such profits be disgorged from
12 Defendant and paid over to Plaintiff;

13      (g)    all other equitable relief, including injunctive relief and corrective
14 advertising, to which Plaintiff shows itself entitled;

15      (h)    Plaintiff recover its reasonable attorneys' fees;

16      (i)    Plaintiff recover its costs of this action and prejudgment and post-
17 judgment interest; and

18      (j)    Plaintiff recover such other relief as the Court may find
19 appropriate.

20                          **<u>JURY DEMAND</u>**

21      Plaintiff demands a jury trial on all issues triable by jury under Federal Rule
22 of Civil Procedure 38.

23

24 Dated:  May 2, 2025              RUTAN & TUCKER, LLP
                                   RONALD P. OINES
25                                 SARAH VAN BUITEN

26                                 By: _____
27                                     Ronald P. Oines
                                       Attorneys for Plaintiff
28                                     NINTENDO OF AMERICA INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PIRKEY BARBER PLLC
Christopher M. Weimer (*pro hac vice*
forthcoming)
David E. Armendariz (*pro hac vice*
forthcoming)
Taylor Luke (*pro hac vice* forthcoming)

*Attorneys for Plaintiff NINTENDO OF
AMERICA INC.*

Rutan & Tucker, LLP
*attorneys at law*

2945/099999-0084
22193357.1 a05/02/25

-27-

COMPLAINT